**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| W.6 Restaurant Group Ltd., d/b/a The Barley House of Cleveland, et al. ) ) ) | **CASE NO. 1:17-cv-02521** |
| Plaintiffs, ) ) | **JUDGE DAN A. POLSTER** |
| -vs- ) ) | **PLAINTIFFS' BENCH BRIEF IN SUPPORT OF SANCTIONS FOR VIOLATION OF PARTIAL SETTLEMENT AGREEMENT** |
| Richard Bengtson, et al. ) ) | |
| Defendants. ) | |

### I.  Introduction.

Proving why the Temporary Restraining Order obtained by Plaintiffs, W.6 Restaurant Group Ltd., d/b/a The Barley House of Cleveland ("Barley House") and Richie Madison ("Madison") was absolutely necessary in the first place, it took less than one (1) week for the self-described "Internet Gangster" FaZe Banks (aka Defendant Richard Bengtson) to rally his mob on December 19 and incite a new wave of dangerous threats of violence against Plaintiffs, their employees and their patrons. These threats now include bomb threats. See examples of threats Plaintiffs have received in Exhibit "A" attached hereto and incorporated by reference. The police have been informed of the bomb threats. In order to protect the safety and well-being of its employees, Plaintiff W.6 Restaurant Group Ltd. was forced to close the Barley House on December 19, just hours after Defendant Bengtson released his inciting video.

Defendant Bengtson's incitement of his social media mob and the rabid social media followers of he and Defendant Alissa Violet Butler must stop. Having so blatantly and carelessly violated the Confidential Partial Settlement Agreement (which is subject to Court enforcement

and was negotiated with the assistance of the Court), Defendant Bengtson, Defendant Butler and their handlers/employer clearly do not appreciate – or worse, do not care – how easily Defendant Bengtson's words and videos incite his social media followers.

The video posted by Defendant Bengtson in no way complies with the "letter and spirit" of the Confidential Partial Settlement Agreement.  *See* Bengtson's Br. in Response to Order Setting Contempt Hearing (Doc. 24) at 2, 8.  To say so is absurd.  Defendant Bengtson must be held to account for his intentional and/or reckless actions and show cause as to why this Court should not sanction him and hold him in contempt of court.  Plain and simple, nothing short of sanctions and being held in contempt will restrain Defendant Bengtson and protect the safety of Plaintiffs and the employees and patrons of the Barley House.

## II.     Facts.

On December 13, 2017, the Parties, with the Court's assistance, entered into a Confidential Partial Settlement Agreement ("Settlement Agreement") resolving the Defendants' challenges to the Temporary Restraining Order and the Plaintiffs' pending Motion for Preliminary Injunction.  The Parties agreed to keep the contents of the Settlement Agreement confidential.

The purpose of the Settlement Agreement was to remove the First Amendment implications from this matter, and provide a specific framework for the Parties as to their statements going forward and the effect of those statements.  Within a week, Defendant Bengtson posted a professionally produced video on behalf of himself and Defendant Butler, the vast majority of which was admittedly already "in the can" before the Parties even contemplated the Settlement Agreement.  Rather than editing the video to comply with the Settlement Agreement or create a new compliant video altogether, Defendant Bengtson disregarded the

negotiated terms and the judicial process, and posted the video in such a way to incite his and Defendant Butler's followers.

Defendant Bengtson's violations of the parties' Settlement Agreement are numerous and self-evident in his video (which is 24 minutes and 33 seconds in length). Plaintiffs have outlined some of the most egregious litany of violations in Exhibit "B" attached hereto.

### III.     Law and Analysis.

"A federal court has the inherent power to enforce compliance with its lawful orders." *In re: Northern Ohio Maritime Asbestos Litigation v. United Fruit Co.,* No. 1:10-CV-00001, 2016 WL 4533012 at *1 (N.D. Ohio 2010).  In Section 8 of the Settlement Agreement, the Parties expressly agreed that this Court retain jurisdiction to enforce the terms and conditions of the Agreement.  "The purpose of a contempt proceeding is to 'enforce the message that court orders and judgments are to be taken seriously.'" *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F.Supp.2d 778, 793 (N.D. Ohio 2005), *aff'd,* 252 Fed. App'x 55 (6th Cir. 2007) (quoting *Electrical Workers Pension Trust Fund v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 385 (6th Cir.2003) and *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir.1987)).  Further quoting *Gary's Elec. Serv. Co.*:

> When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court. *See NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir.1987). Recognizing that the power "to punish for contempts" should not be used lightly, the Supreme Court has stated that this power "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. *Cincinnati Bronze,* 829 F.2d at 590.

*Bevcorp*, 411 F.Supp.2d at 793 (quoting *Gary's Elec. Serv. Co.* at 378-79).

3

"The decision whether to hold a person in contempt is within the trial court's sound discretion." *Id.* (quoting *Gary's Elec. Serv. Co.* at 378 and citing (citing *Peppers v. Barry,* 873 F.2d 967, 968 (6th Cir.1989)). A district court's decision will only be reversed if the court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Gary's Elec. Serv. Co.* at 378; *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir.2017).

"The court's discretion includes the power to frame a sanction to fit the violation." *Bevcorp*, 411 F.Supp.2d at 793 (citation omitted). "With respect to civil contempt proceedings, judicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Id.* at 794 (quoting *Gary's Elec. Serv. Co.* at 378) (internal citation and alteration removed).

"A complaining party in a civil contempt case must prove by clear and convincing evidence that the alleged contemnor violated 'a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts *with knowledge of the court's order.*'" *Id.* (quoting *Cincinnati Bronze*, 829 F.2d at 590) (emphasis in original). When evaluating the actions of a defendant, the Court may "also consider whether the defendant 'took all reasonable steps within [his] power to comply with the court's order.'" *Gary's Elec. Serv. Co.* at 379 (quoting *Peppers,* 873 F.2d at 969).

In this case, Defendant Bengtson materially breached and violated Section 2 of the Settlement Agreement. Section 2 provided specific instructions that, with respect to the Disputed Events of the underlying incident, Defendant Bengtson was specifically limited to discuss six (6) subject matters. He was given limited leeway in which he could address those

4

specific six (6) subject matters in that he could use his own words. However, the use of his own words was further limited by the requirement for him to affirmatively take all reasonable steps to ensure that the video will not incite any hostile or violent reactions toward the Barley House or its affiliated entities, Richie Madison, or any employees or known patrons of the Barley House or its affiliated entities. Settlement Agreement at §2.

Defendant Bengtson did not limit the video to the specific six (6) subject matters of the Disputed Events. Defendant Bengtson did not take all reasonable steps within his power to ensure the video would not incite any hostile or violent reactions. Defendant Bengtson, on behalf of himself and Defendant Butler, materially breached and flagrantly exploited the Settlement Agreement as a vehicle for him to disseminate the video he originally made and desired to post on or around December 1, 2017 before the TRO was entered against him. Indeed, the title of the video itself – **"I was not allowed to upload this video"** – brazenly and unashamedly reflects Defendant Bengtson's knowledge that the video does not comport with the terms and conditions of the Settlement Agreement.

In direct violation of the Settlement Agreement, Defendant Bengtson intentionally and recklessly littered the video with allegations of wrongdoing on the part of Plaintiffs in order to incite his followers. For example, he discusses the supposed "lack of help or protection from Barley at all," and how Barley House staff supposedly "did nothing throughout the night to help us. They were mocking us on the way out. They were telling us 'Get the fuck out of here, we don't give a fuck who you are.' All this crazy shit. We didn't blast this place for no reason. Obviously something happened, obviously we felt wronged . . . . I get embarrassed, thrown out, dragged out by my neck, her family is all there. It was embarrassing for me, I was mad. Alissa

got hurt in all of this. And all this has everything to do with Barley." *See* video at 10:55 – 11:42.[1]

Defendant Bengtson's incitement of violence and harassment did not stop there. As some of the examples of the more egregious violations of the express terms of the Settlement Agreement (including his promise to take all reasonable steps to not incite any hostile or violent reactions to the Barley House), Defendant Bengtson:

- incredibly provides his commentary wherein he "break[s] down what Barley did wrong" and "the past of Barley, just to support my claims that this isn't a perfect establishment, going on to state that "Barley is not right in this, and I'm going to go into where they went wrong," inciting his CloutGang by stating "You guys are probably asking yourself, 'Well, if this guy hit Alissa and he doesn't work for Barley, then what is the problem? What did they do wrong?' They did plenty wrong" (3:56 – 4:02; 4:55 – 5:08); and

- specifically identifies Plaintiff Madison by name in a text message screenshot and details that "my beef with Barley is with what happened in the basement with [the bouncer] where he grabbed me by my neck, dragged me up the stairs for no other reason than me waiting in a restricted area . . . . As I said in my last video, I was allowed to be down there, he shouldn't have done this, he mishandled the situation 100%," he "was wrong, Barley was wrong. Barley staff, they were wrong, period" (5:09 – 5:51).

The incitement does not just come in verbal form. The video also contains images designed to incite that cannot be encompassed in a written transcript of the video. See Written Video Transcript filed as Exhibit 3 to Bengtson's Br. in Response to Order Setting Contempt Hearing (Doc. 24-3). For example, when describing Barley House's response to the altercation between the Defendants and other Barley House patrons, the video includes on-screen text suggesting Barley House security pushed Ms. Butler while ignoring the other patrons and on-

---

[1] A copy of the video was available at https://www.youtube.com/watch?v=kr7oKWISbHw&t=1293s and https://m.youtube.com/watch?feature=youtu.be&v=kr7oKWISbHw until approximately 11:00 am eastern on December 21, 2017. Up until that point, while the video appeared to be hidden from public view, at least some people still were able to access and comment on the video. *See* Exhibit "C" at p.3 attached hereto ("I can't believe they made him delete this but somehow I'm still watching it???").

screen images of the dictionary definition of "favoritism". *See* Video at 13:50-14:12; Video Tr. at 23:23 – 24:11. The video also inserts internet memes as a way to incite followers. *See* "Hold My Beer" Meme inserted at Video at 14:27 – 14:36; Video Tr. at 24:21 – 24:24.

These statements and portions of the video can only be interpreted as a deliberate attempt by Defendants to incite hostile and violent reactions toward the Barley House, Richie Madison, and any employees and known patrons of the Barley House. In no way does this comply with the "letter and spirit" of the Settlement Agreement. *See* Bengtson's Br. in Response to Order Setting Contempt Hearing (Doc. 24) at 2, 8. Defendants must be sanctioned.

### IV. **Proposed Sanctions.**

Defendants must be instructed to remove any and all references to Barley House, its affiliated entities, its employees (including Plaintiff Madison), and any known patrons from their social media and must specifically disallow the republishing of the same.

Defendants must compensate Plaintiffs for the damages incurred as a result of the breach and disregard of the Settlement Agreement, including costs, fees, and attorneys' fees. Plaintiffs respectfully request a bifurcated process wherein the Court first issues the sanctions against Defendants, and then sets the matter for hearing or briefing on damages.

Finally, Plaintiffs respectfully request a significant monetary sanction be issued against Defendants, which then ostensibly would be passed through to their promoters, handlers, and/or employers. In less than 12 hours since being rolled out, the video amassed in excess of **1,000,000 views** and countless comments. As Defendant Bengtson openly proclaimed, "I've never gotten this many views ever" and it is "December right now" – which "means the CPM is blasted way up." The term CPM is a marketing term used to denote the price an advertiser pays

7

for one thousand views of clicks of an advertisement.[2] Together with the links in comments to other websites *posted by Defendant Bengtson himself* (ostensibly as another revenue stream designed to maximize his earnings from this video), it stands to reason that the "Internet Gangster" profited quite handsomely at the expense of the safety and well-being of Plaintiffs and their employees. To compensate Plaintiffs for their tangible and intangible loss as a result of this video, in addition to the monetary expenses they have sustained in seeking this relief and lost revenue suffered by shutting down Barley House, Defendant Bengtson should be required to disgorge all monies and revenue made in connection with the subject video unless he can show cause to the contrary.

**V. Conclusion.**

For each and every reason discussed herein, in order to minimize the irreparable damage suffered by Plaintiffs as a result of Defendant Bengtson's latest and most damaging video, Plaintiffs respectfully request that Defendant Bengtson be appropriately sanctioned for his conduct and breach of the Settlement Agreement.

          Respectfully submitted,

          /s/ Christopher B. Congeni
          Christopher B. Congeni (#0078160)
          Adam D. Fuller (#0076431)
          Chad R. Rothschild (#0088122)
          **BRENNAN, MANNA & DIAMOND, LLC**
          75 East Market St.
          Akron, Ohio 44308
          Telephone:    330.253.5060
          Facsimile:     330.253.1977
          Email:          cbcongeni@bmdllc.com
                           adfuller@bmdllc.com
                           crothschild@bmdllc.com

---

[2] https://en.wikipedia.org/wiki/Cost_per_mile.

/s/ Jeffrey C. Miller
Jeffrey C. Miller (#0068882)
**BRENNAN, MANNA & DIAMOND, LLC**
200 Public Square, Suite 3270
Cleveland, Ohio 44114
Telephone: 216.658.2155
Facsimile: 216.658.2156
Email: jcmiller@bmdllc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 10th day of January 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Christopher B. Congeni
*Counsel for Plaintiffs*

4810-4782-0122, v. 1