UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| W.6 Restaurant Group Ltd., d/b/a The Barley House of Cleveland, et al.<br><br>　　　　　　Plaintiffs<br><br>v.<br><br>Richard Bengtson, et al.<br><br>　　　　　　Defendants | ) CASE NO.: 1:17-cv-02521<br>)<br>) JUDGE DAN AARON POLSTER<br>)<br>) **RICHARD BENGTSON'S BRIEF IN**<br>) **RESPONSE TO PLAINTIFFS' BENCH**<br>) **BRIEF IN SUPPORT OF SANCTIONS**<br>) **FOR VIOLATION OF THE PARTIAL**<br>) **SETTLEMENT AGREEMENT**<br>)<br>)<br>) |

Defendant Richard Bengtson ("Bengtson"), by and through his undersigned counsel, submits his Brief in Response to Plaintiffs' Bench Brief in Support of Sanctions for Violation of the Partial Settlement Agreement (ECF No. 25). As more fully discussed in his Brief in Response to Order Setting Contempt Hearing (ECF No. 24), this Court may not hold Bengtson in contempt of Court because he did not violate any definite and specific Court order and he did not violate the terms of the private partial settlement agreement entered into by the parties (the "Partial Settlement Agreement" or "Agreement"), and in any event, did not breach the Partial Settlement Agreement.

**ARGUMENT**

**I.    In the Absence of a Definite and Specific Court Order, Contempt Is Inappropriate.**

While a federal district court has the inherent power and discretion to enforce compliance with its lawful orders, it abuses that power and discretion when it issues a finding of contempt and imposes sanctions in the absence of a definite and specific court order. *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). It is black letter law that the first element in a contempt case is the violation of "a definite and specific order of the court requiring [a party] to perform or

(01128967-1)

refrain from performing a particular act or acts with knowledge of the court's order." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987). The "definite and specific order of court" prerequisite "guards against arbitrary exercises of the contempt power." *Gascho v. Global Fitness Holdings*, LLC, 875 F.3d 795, 800 (6th Cir. 2017). Plaintiffs cite to no contrary authority, and the authority they do cite to **requires** the violation of a definite and specific order of the Court before a court may find a party in contempt. (ECF No. 25 at 3-4.)

Here, there exists no "'definite and specific order' that has been disobeyed," *Glover*, 138 F.3d at 244, and the Court did not incorporate the terms of the Partial Settlement Agreement into any court order. Thus, any purported violation of the Agreement (which Bengtson disputes) is simply a breach of contract—not a violation of Court order. And as the Sixth Circuit recently explained the Court's contempt power is not "meant to force parties to comply with contracts, where a breach of contract action would be more appropriate. Rather, the contempt power is reserved for parties that knowingly violate clear and specific commands of the court." *Gascho*, 875 F.3d at 801 (6th Cir. 2017); *see also In re Roberson*, No. 16-11784, 2017 Bankr. LEXIS 4147, at *3 (Bankr. N.D. Ohio Dec. 6, 2017) ("without clear and convincing evidence of a definite and specific order, there could be no finding of contempt under applicable Sixth Circuit precedent").

Further, the mere fact that the parties agreed in the Partial Settlement Agreement that the Court would retain jurisdiction to enforce it does not transform the Agreement into a Court order. Nor does the fact that the Court was present when the portions of the Agreement were negotiated. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."). Stated simply, for the terms of the Partial Settlement Agreement

2

to become a "definite and specific" Court order, they must be expressly incorporated into a Court order. That has not happened here. The Agreement is not—nor any Order incorporating its terms—found on the Court's docket; it is not part of the record in this case; and it is otherwise confidential.[1]

Plaintiffs have cited no law contrary to the above principles. Thus, their contention that Bengtson be held in contempt of Court fails at the first hurdle: proving by clear and convincing evidence that Bengtson violated a definite and specific Court order.

**II.     Bengtson Complied with the Letter and Spirit of the Agreement.**

Contrary to Plaintiffs spurious contentions, Bengtson did not intend to cause or incite violence or harassment with his Vlog.[2] In fact, as Plaintiffs conveniently ignore, Bengtson specifically condemns such conduct (multiple times):

> Before I· get into anything else I want to make this crystal clear, I do not condone any sort of violent behavior, harassment, false reviews, any sort of negativity, any sort of negative response to Barley House or any of its employees. I do not condone that. It's not what I want and it's simply not okay.

Tr.[3] 2; Vlog at :02-:17. The examples of alleged "incitement" referenced on page 6 and in Exhibit B of Plaintiffs' Bench Brief come nowhere close to encouragement of hostile reactions in violation of the Agreement, let alone legal incitement, and the spurious suggestion in the last point in Exhibit B that Bengtson was somehow thanking his fans for threatening the Barley House is completely false, not to mention preposterous on its face.

---

[1] Indeed, because of the confidential nature of the Agreement, neither Plaintiffs nor Bengtson have even filed the Agreement on this Court's public docket.
[2] The "Vlog" refers to the video Bengtson posted on YouTube captioned "I was not allowed to upload this video…"
[3] "Tr." refers to transcript of the Vlog that is attached as Exhibit 3 to Bengtson's Brief in Response to Order Setting Contempt Hearing (ECF No. 24-3).

Bengtson is and was sincere that he does not condone any hostile or violent reactions to the Barley House. To be sure, the threats that Barley House received from various Internet trolls and commentators, which threats Plaintiffs attached as Exhibit A to their Bench Brief, are reprehensible. But Bengtson did not make those threats, nor did he authorize, direct, or ratify those disgraceful threats; he complied with the terms of the Agreement to take all reasonable steps to ensure that the Vlog would not incite any hostile or violent reactions toward the Barley House or its affiliated entities, Richie Madison, or any employees or known patrons of the Barley House or its affiliated entities.

The gist of Plaintiffs' complaints regarding the content of the Vlog is that they thought the Vlog would be a short video in which Bengston would more or less merely recite the terms of the Partial Settlement Agreement as a word-for-word script. But that is not what the Agreement provides. The Agreement does not dictate:

- How long the Vlog could be;

- How redundant (or to the point) Bengtson would be;

- Whether Bengtson could talk about subjects that were not related to the Disputed Events;

- Whether Bengtson could specifically identify any single person[4];

- Whether Bengtson could swear;

- Whether Bengtson could use the Barley House's own video or security footage to place context and background to his statements;

---

[4] Plaintiffs make much of the fact that Plaintiff Richie Madison's name appears in a screenshot of a text message conversation that Bengtson displays during the Vlog. But Mr. Madison is a **named** plaintiff in this lawsuit and has been identified in media reports prior to the posting of the Vlog. *See* http://www.cleveland19.com/story/36963017/watch-full-surveillance-video-from-barley-house-incident-with-youtube-stars (posted Nov. 30, 2017). Moreover, the Partial Settlement Agreement does not prohibit mention of Mr. Madison's name; but in any event, every other mention of his name is blurred or censored out; this one instance was simply an oversight.

- The title of the Vlog; and

- Whether Bengtson could use footage from a video(s) that he made prior to entering the Agreement.

If the Plaintiffs wanted to prohibit Bengtson from doing any of the above in his Vlog, then they should have expressly required such prohibitions in the Agreement. They did not, however. And Bengtson complied with the terms of the Agreement as written.

### III. Plaintiffs' Proposed Sanctions Are Inappropriate.

The sanctions that Plaintiffs propose are far out of line with what is appropriate and authorized by law. Plaintiffs propose, *inter alia*, that Bengtson disgorge any monies and revenue made in connection with the Vlog, that Bengtson pay their attorneys' fees, and that this Court impose a "significant monetary sanction." (ECF No. 25 at 7.)

"In American law, disgorgement of profits is not generally an available remedy for breach of contract." *Kansas v. Nebraska*, 135 S. Ct. 1042, 1068 (2015) (Thomas, J., concurring in part and dissenting in part). Ohio law is no different.[5] Disgorgement of profits is an ***equitable*** remedy. *See, e.g.*, *Miller v. Cloud*, 2016-Ohio-5063, ¶ 105 (Ohio Ct. App. 2016). "Ohio law has consistently held that where there is an adequate remedy at law, an equitable remedy is improper." *McNulty v. Pls Acquisition Corp.*, 2002-Ohio-7220, ¶ 80 (Ohio Ct. App. 2002) (holding that in a breach of contract action, the trial court erred in directing a verdict in favor of plaintiff on plaintiff's claim for the equitable remedy of an accounting).

Further, the Partial Settlement Agreement does not contain any "loser pays" provision and thus, under the American Rule, each party must bear their own attorneys' fees. *See, e.g.*, *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 548 (2009) ("Ohio has long adhered to the

---

[5] The Agreement provides that it shall be interpreted and governed under the substantive law of Ohio. Agreement at § 10.

5

'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation."). Thus, Plaintiffs' may not recover their attorneys' fees.

Finally, to the extent that they seek a punitive monetary sanction, Plaintiffs run straight into case law holding that punitive damages are not available for a breach of contract. Indeed, the Supreme Court of Ohio recently reaffirmed that "punitive damages may not be awarded for breach of contract, no matter how willful the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, -- Ohio St.3d --, 2018-Ohio-15, ¶ 35 (Jan. 4, 2018).

Even if this Court were to hold Bengtson in contempt, the sanctions proposed by Plaintiffs are far out of line with what the sanctions this Court is authorized to impose in a civil contempt proceeding.[6] Civil contempt sanctions have two functions: (1) to compensate the party harmed by the other party's contemptuous actions; and (2) to coerce the party in contempt to act in the manner desired by the Court. *CONRAIL v. Yashinsky*, 170 F.3d 591, 595 (6th Cir. 1999); *see also United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) ("Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant."). The sanctions proposed by Plaintiffs go far beyond compensating them for their alleged injuries due to Bengtson's breach of the Agreement. Instead, the sanctions proposed by Plaintiffs are designed to punish Bengtson—not compensate Plaintiffs. Further, Bengtson is in compliance with the Agreement, and intends to continue complying therewith.

---

[6] Plaintiffs do not appear to argue that Bengtson be held in criminal contempt of Court, nor should he be.

**CONCLUSION**

For the reasons stated above and for the reasons the set forth in Bengtson's Brief in Response to Order Setting Contempt Hearing, the Court should not hold Bengtson in contempt or in breach of the Partial Settlement Agreement.

>Respectfully submitted,
>
>*/s/ David M. Cuppage*
>Robert T. Glickman (0059579)
>David M. Cuppage (0047104)
>Nicholas R. Oleski (0095808)
>MCCARTHY, LEBIT, CRYSTAL
> & LIFFMAN CO., LPA
>101 West Prospect Avenue
>1800 Midland Building
>Cleveland, Ohio 44115
>(216) 696-1422 – Telephone
>(216) 696-1210 – Facsimile
>rtg@mccarthylebit.com
>dmc@mccarthylebit.com
>nro@mccarthylebit.com
>
>*Attorneys for Defendants*
>
>
>*/s/Scott J. Sholder*
>Scott J. Sholder (*pro hac vice*)
>COWAN, DEBAETS, ABRAHAMS &
> SHEPPARD, LLP
>41 Madison Avenue, 38th Floor
>New York, New York 10010
>(212) 974-7474 – Telephone
>(212) 974-8474 – Facsimile
>ssholder@cdas.com
>
>*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum complies with the 15-page limitation for memoranda relating to a non-dispositive motion in a case assigned to the Standard Track.

>                        */s/ David M. Cuppage*
>                        David M. Cuppage
>                        *One of the Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The foregoing was electronically filed this 11th day of January 2018. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>                        */s/ David M. Cuppage*
>                        David M. Cuppage
>                        *One of the Attorneys for Defendants*