IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| W.6 Restaurant Group Ltd., d/b/a The Barley House of Cleveland, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Richard Bengtson, et al.,<br><br>    Defendants. | Case No. 1:17-cv-02521<br><br>Judge Dan Aaron Polster |
| **MOTION OF EUGENE VOLOKH TO INTERVENE<br>AND GAIN ACCESS TO A JUDICIAL DOCUMENT** | |

Movant Eugene Volokh respectfully seeks leave to intervene in this case for the limited purpose of asserting the public's First Amendment and common-law rights of access to judicial records, including the Partial Settlement Agreement dated December 13, 2017 that appears to be the basis for pending contempt proceedings.

Plaintiffs and Defendants have been asked whether they consent to this Motion. Defendants do not consent, and Plaintiffs have not responded.

Prof. Volokh's motion is supported by the attached memorandum.

**MEMORANDUM IN SUPPORT**

This lawsuit raises important issues in the roiling public debate about the rights and responsibilities of online speakers. It also implicates important questions about the role of the courts in policing this speech. And it has been hotly litigated, giving rise to contempt proceedings before this Court arising from a partial settlement agreement between the parties.

The public has a right to access these proceedings and records. Secured by the First Amendment and Sixth Circuit common law, that right is independent of the parties' substantive claims and interests, and enforceable by members of the public. And the right cannot be limited until the parties make specific factual showings, and after the Court (after providing an opportunity for the public to be heard) makes specific findings justifying redaction or partial sealing of documents.

Here, the parties have made no such showings to justify restricting public access to records in the contempt proceedings, including the settlement agreement that appears to undergird the dispute they have presented to the Court. And based on the information presently available to the public, they cannot.

Movant Eugene Volokh is a law professor who focuses on First Amendment and Internet law. He has written about this suit on his *Washington Post* blog.[1]

---

[1] Prof. Volokh's eponymous blog, The Volokh Conspiracy, was then hosted by *The Washington Post*. Eugene Volokh, *Business gets order against two customers, barring them from 'publishing on social media platforms any statements' about the business* (WASH. POST Dec. 2, 2017), https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/12/02/business-gets-order-against-two-customers-barring-them-

Prof. Volokh's right of access to the documents based on which the Court adjudicates the parties' disputes, including the settlement agreement at issue in the contempt proceedings, is vital to his continued coverage of this important controversy. He therefore requests leave to intervene and be heard to assert the public's right of access, and that the Partial Settlement Agreement (the "Agreement") be docketed and made publicly available.

**I. Documents used in contempt proceedings, and settlement agreements considered by courts, are subject to public access.**

The public's right of access to civil proceedings is guaranteed by the First Amendment and the common law. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983); *see also Karl v. Bizar*, 2009 WL 3644115, at *2 (S.D. Ohio Oct. 28, 2009) (public right of access to "documents forming the basis for adjudication" is not outweighed by commercial self-interest or parties' interests in avoiding adverse publicity) (applying *Brown*); *Wedgewood Ltd. v. Twp. of Liberty*, 2007 WL 1796089, at *3 (S.D. Ohio June 21, 2007) ("a strong public right of access attaches when a document is filed or utilized in public proceedings") (citing *Brown*).

---

from-publishing-on-social-media-platforms-any-statements-about-the-business/; Eugene Volokh, *Update on the Barley House Injunction* (WASH. POST Dec. 4, 2017), https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/12/04/update-on-the-barley-house-injunction/; Eugene Volokh, *When speech criticizing people leads to threats against them*, (WASH. POST Dec. 4, 2017), https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/12/04/when-speech-criticizing-people-leads-to-threats-against-them/. His blog is now hosted by Reason Magazine, http://reason.com/volokh.

The public's right of access attaches to civil-contempt proceedings, and "documents necessary to understand the merits of a civil contempt proceeding are covered by the First Amendment's presumptive right of access." *Newsday v. Cty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983) ("the protection of the First Amendment extends to proceedings for contempt"); *In re Motion for Civil Contempt by John Doe*, 2016 WL 3460368, at *3 (E.D.N.Y. June 22, 2016) (First Amendment right of access applies to contempt proceedings and documents that are a "necessary corollary of the capacity to attend" those proceedings).[2]

The public's right of access also attaches to settlement documents, particularly when they are presented for consideration by the court, or subject to enforcement in court. *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 242-43 (2d Cir. 2014); *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 834 (7th Cir. 2013) ("the presumption of a right of public access to court documents should apply" where "the settlement is sought to be enforced."); *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (enforcing public's right of access to "documents that were integral to its approval" of a settlement agreement).

---

[2] The common-law right of access also applies to documents considered by courts in civil-contempt proceedings. *See, e.g., BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, 2015 WL 12991090, at *3 (M.D.N.C. July 21, 2015) (documents that "will be used in adjudicating the motion for contempt" are "judicial documents" subject to the common-law right of access).

The Agreement is therefore subject to the public's right of access. The parties disagree about how it should be interpreted and enforced, and they have presented their dispute to the Court for adjudication. This Court has "considered," "used," and "utilized" the Agreement to adjudicate potential sanctions arising from its alleged violation. The Agreement should therefore be docketed,[3] and may only be lawfully withdrawn from public access in whole or part after the parties satisfy mandatory legal burdens, and the Court makes mandatory on-the-record findings. *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016) ("When a district court opts to seal court records, it must set forth specific findings and conclusions 'which justify nondisclosure to the public.'") (quoting *Brown*, 710 F.2d at 1176); *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016) ("The interest [justifying nondisclosure] is to be articulated along with findings specific enough that a reviewing court can determine whether" access was lawfully restricted).

---

[3] *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) (holding that the First Amendment right of access extends to docket information, noting that docketing "endow[s] the public and press with the capacity to exercise their rights guaranteed by the First Amendment," and without docketing sealed records and proceedings, the public's right of access "would be merely theoretical").

The Agreement does not appear to have been electronically docketed, whether under seal or otherwise, but appears to have been submitted to the Court for consideration and adjudication. The Jan. 16, 2018 minutes, as well as the briefs filed related to the contempt hearing (ECF Doc. Nos. 24, 25, and 26) reflect that the contempt proceedings will focus closely on whether the Agreement has been knowingly violated—something that will surely require further "consideration," "use," and "utilization" of that document. And if the Notice of Partial Settlement, ECF No. 15, is correct in stating that "the Court shall retain jurisdiction to enforce [the Agreement's] terms and conditions," that enforcement must likewise "consider" "use," and "utilize" the document.

## II. There is no lawful basis to restrict public access to the Agreement.

As an initial matter, parties cannot eliminate the public's right of access simply by entering into a confidential agreement, which "does not bind the court in any way." *Brown*, 710 F.2d at 1180 (vacating sealing orders, upon request by non-party public interest research group, despite confidentiality agreement between plaintiff and the Federal Trade Commission). Nor do "explicit confidentiality provisions" in settlement agreements suffice to justify sealing them. *See, e.g.*, *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (denying unopposed motions to file court records under seal on the basis that they "involve the terms of confidential settlement agreements," even though "preserving the confidentiality of settlement agreements may encourage settlement" and "denying a motion to seal may chill future settlement discussions"); *Wells Fargo v. Wales*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (whether settlement agreement "contains a confidentiality clause is not binding here, given the public's right of access to 'judicial documents'").

Parties are not the arbiters of the public's right of access. They cannot, by agreement among themselves, strip third parties like Prof. Volokh of their right to understand what transpires in court, or relieve themselves of their burden to justify limiting access. "The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)," *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th

Cir. 1999), and courts may not "turn this function over to the parties." *Procter & Gamble. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

Even reliance on judicial sealing orders is "too thin a reed" to justify restrictions, and "litigants' reliance on the confidentiality of certain documents in reaching a court-approved settlement agreement fails to overcome the presumption of public access." *Rudd,* 834 F.3d at 595 (quoting *Johnson v. Corr. Corp. of Am.*, 2014 WL 3970115, at *2–3 (W.D. Ky. Aug. 13, 2014). To justify a proposed restriction, parties must prove that (1) it is necessary to prevent harm to a compelling interest; (2) no alternative will suffice; (3) it is narrowly tailored; and (4) it will be effective.

1. **The parties have not established harm to a compelling interest, nor the existence of any interest capable of justifying sealing.**

Public access may only lawfully limited to prevent a substantial probability of harm to a compelling government interest. *See, e.g., Richmond Newspapers v. Virginia,* 448 U.S. 555, 580-81 (1980); *Press-Enterprise v. Sup. Ct. of Cal.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"); *Press-Enterprise v. Sup. Ct. of Cal.*, 478 U.S. 1, 13–14 (1986) ("*Press Enterprise II*").

Confidentiality is not, *per se,* a sufficient interest to justify sealing, and parties' desire to litigate in secret cannot overcome the American tradition of open courts. *See, e.g., Aioi v. ProSight*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) ("[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents.").

Nor are the most common reasons parties seek confidentiality agreements sufficient to justify restricting public access. "[C]ommercial self-interest" does not justify abrogating the public's right of access. *Procter & Gamble*, 78 F.3d at 225. Nor does a party's interest "in avoiding adverse publicity," "particularly where the subject of the litigation is of great public concern." *Bizar*, 2009 WL 3644115, at *2 (internal quotations omitted).

The subject of this litigation is indisputably of great public concern. It tests the legal redress available where online speech, amplified by social-media platforms and celebrities, is alleged to have caused great harm. In this case, the public interests that animate the public's right of access are at an apogee:

- Access enables court proceedings to promote "community catharsis," a particularly important interest given the allegations in the underlying lawsuit. *Brown*, 710 F.2d at 1178 ("When judicial decisions are known to be just and when the legal system is moving to vindicate societal wrongs, members of the community are less likely to act as self-appointed law enforcers or vigilantes.").

- "[P]ublic access provides a check on courts," and the "remedies or penalties imposed by the court will be more readily accepted, or corrected if erroneous, if the public has an opportunity to review the facts presented to the court. *Id.* ("Although the federal judiciary is not a majoritarian institution, public access provides an element of accountability. One of the ways we minimize judicial error and misconduct is through public scrutiny and discussion.").

- Public access promotes "true and accurate fact finding," by creating "a critical audience and hence encourages truthful exposition of facts." *Id.* ("When information is disseminated to the public through the media, previously unidentified witnesses may come forward with evidence," and "may be less inclined to perjure themselves.").

Without access to the Agreement, the public cannot fully perform this role with respect to the pending contempt proceedings, which implicate important issues concerning the adjudication of contempt penalties, *see Gascho v. Global Fitness Holdings*, 875 F.3d 795 (6th Cir. 2017), and agreements that purport to waive a speaker's First Amendment rights, *see Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394 (Cal. Ct. App. 1999). Prof. Volokh wants (and is well-positioned) to write about these issues, but he cannot do so meaningfully without seeing the text of the Agreement.

There may nonetheless be specific reasons for keeping portions of the agreement confidential, such as "if the settlement agreement compromises personal safety, reveals trade secrets, or identifies a minor." *Hart v. ITC Serv. Grp.,* 2017 WL 2728439, at *1 (W.D. Mo. June 23, 2017) (collecting cases). But to movant's knowledge, there has been no showing of any kind to that effect, much less any finding on the record that there is anything of this nature in the Agreement itself.

**2. The parties have not shown that sealing, instead of myriad less-restrictive alternatives, is necessary to protect any valid interest.**

Abrogating the public's right of access is inappropriate if there are alternatives that can adequately protect a valid and cognizably threatened interest. *See, e.g.*, *Press-Enterprise II* at 13–14. It is difficult to speculate about alternative protections because no harm has been identified, but limiting the public's right of access must in all events be the last resort. Even when public disclosure of inculpatory information threatens to prejudice a criminal defendant's right to a fair trial, the First Amendment requires the use of alternative measures that do not limit public access,

including jury admonishment and attentive *voir dire*. *In re NBC*, 828 F.2d 340, 347 (6th Cir. 1987); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 563–64 (1976) (listing less restrictive alternatives). First Amendment rights deserve at least as much protection in a case such as this one, where a criminal defendant's countervailing Sixth Amendment rights are not on the line.

### 3. Limited redaction would adequately protect any valid interest.

In a similar vein, any restriction on access must be narrowly tailored, and no broader than necessary to protect a threatened interest. *See, e.g.*, *Richmond Newspapers*, 448 U.S. at 581; *Press-Enterprise II* at 14. If a narrower means of protecting that interest exists, such means must be employed to limit any impact on the public's access rights. *Press-Enterprise I* at 510–11. "Redaction constitutes a time-tested means of minimizing any intrusion on [the public's access] right." *In re Providence Journal*, 293 F.3d 1, 15 (1st Cir. 2002).

Even if there were some overriding interest threatened by particular information in the Agreement, limited redaction would therefore be required as a more narrowly tailored restriction than withholding the Agreement in its entirety.

### 4. Continued restrictions are futile.

There is no proper basis to seal records to protect information that is already largely public. *Press-Enterprise II* at 14 (requiring that restriction "would prevent" alleged harm); *see also Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1146 (9th Cir. 1983) ("there must be 'a substantial probability that closure will be effective in

protecting against the perceived harm'") (citation omitted). Here, the contempt proceedings were open to the public, reported in the press,[4] and some aspects of the Agreement have been made public. Not only do these disclosures demonstrate that access to the Agreement is a "necessary corollary" to the in-person access this Court properly afforded, they demonstrate the futility of withholding the already-known portions of the Agreement, and undermine any claim that harm would result from disclosing related information. At the same time, Prof. Volokh, as an academic legal commentator, needs access to the entire Agreement—not just press accounts, quotes, or paraphrases in briefs—to ensure that his analysis of the Agreement is sound.

### III.  Prof. Volokh has a right to intervene and be heard.

For its right of access to be meaningful, the public must be heard.

> [T]he public and press should be afforded, where possible, an independent opportunity to present their claims. Certainly, the failure to invite participation of the party seeking to exercise first amendment [and common law rights] reduces the possibility of a narrowly drawn order, and substantially imperils the protection which the amendment [and the common law] seeks to assure. The importance of the rights involved and interests served by those rights require that the public and press be given an opportunity to respond before being denied their presumptive right of access to judicial records.

*In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 475 (6th Cir. 1983).

---

[4] *See, e.g.*, Eric Heisig, *Judge: YouTube star Ricky 'Faze' Banks' lawyers must explain whether they OK'd Barley House fracas video* (CLEVELAND.COM Jan. 12, 2018), http://www.cleveland.com/court-justice/index.ssf/2018/01/judge_youtube_star_ricky_faze.html.

A limited motion to intervene is the proper vehicle for non-parties to seek access to court documents. *In re Knoxville News-Sentinel*, 723 F.2d at 476 (courts should allow "interested members of the public an opportunity to intervene and present their views to the court."); *In re Consumers Power Co. Sec. Litig.*, 109 F.R.D. 45, 47 (E.D. Mich. 1985) ("*In re Knoxville* recognized a special, limited purpose intervention to provide the press and/or public a reasonable opportunity to state objections to a protective order or other obstacle to access to certain information involved in a litigation."); *U.S. ex rel. Martin v. Life Care Centers of Am.*, 912 F. Supp. 2d 618, 622 (E.D. Tenn. 2012) (granting limited motion to intervene to challenge restrictions on access); *Application of Storer Commc'ns, Inc.*, 828 F. 2d 330, 335 (6th Cir. 1987) (approving media intervention to challenge restrictions on public access to court proceedings).[5]

## Conclusion

Prof. Volokh thus respectfully requests that this Court grant his Motion to Intervene and Gain Access to a Judicial Document, and direct the Clerk to place the Agreement on the Court's electronic docket.

---

[5] Prof. Volokh does not seek leave to participate in this litigation beyond his request for access to documents at issue in the contempt proceedings, and therefore does not seek leave to be added as a party-in-interest, as is the practice in other circuits. *See Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) (allowing intervention under Fed. R. Civ. P. 24). If the Court prefers, he will restyle his Motion and seek leave to intervene under that Rule.

*/s/ Patrick S. Kabat*
Patrick Kabat (NY Bar No. 5280730)
Subodh Chandra (OH Bar No. 0069233)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Patrick.Kabat@ChandraLaw.com
Subodh.Chandra@ChandraLaw.com

*Attorneys for Movant Eugene Volokh*

**CERTIFICATE OF SERVICE**

I certify that on January 17, 2017, I filed this Motion and Memorandum on the Court's electronic docket, where it will be served by the Court's electronic filing system on all parties of record.

> */s/ Patrick S. Kabat*
> *Attorney for Movant Eugene Volokh*