**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| W.6 Restaurant Group Ltd., d/b/a The Barley House of Cleveland, et al. | ) ) | CASE NO. 1:17-cv-02521 |
| | ) | JUDGE DAN A. POLSTER |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | **PLAINTIFFS' MOTION TO SHOW** |
| | ) | **CAUSE AND FOR SANCTIONS** |
| Richard Bengtson, et al. | ) | **AGAINST DEFENSE COUNSEL** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now come Plaintiffs, W.6 Restaurant Group Ltd., d/b/a The Barley House of Cleveland,

et al. ("Plaintiffs"), by and through undersigned counsel, and hereby respectfully request this

Court issue an Order requiring Defense Counsel, David M. Cuppage, Esq. and Robert T.

Glickman, Esq., of the law firm, McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Scott

Sholder, Esq., of the law firm, Cowan, Debaets, Abrahams & Sheppard, LLP (collectively,

"Defense Counsel"), to show cause as to why they should not be held in contempt of court for

failing to abide by the terms of the parties' Confidential Partial Settlement Agreement; inducing

Defendant, Richard Bengtson, to violate the same; and/or abusing the inherent discretion of the

Court. In conjunction with the filing of this Motion, Plaintiffs respectfully request sanctions,

costs, fees, expenses, and such other relief as this Court deems just and equitable to compensate

Plaintiffs for the damages caused by Defense Counsel's misconduct.

1

The reasons for the within Motion are more fully set forth in the Memorandum of Support and exhibits attached hereto, and incorporated by reference herein.

Respectfully submitted,

/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
Adam D. Fuller (#0076431)
Chad R. Rothschild (#0088122)
**BRENNAN, MANNA & DIAMOND, LLC**
75 East Market St.
Akron, Ohio 44308
Telephone:     330.253.5060
Facsimile:      330.253.1977
Email:          cbcongeni@bmdllc.com
                adfuller@bmdllc.com
                crothschild@bmdllc.com

/s/ Jeffrey C. Miller
Jeffrey C. Miller (#0068882)
**BRENNAN, MANNA & DIAMOND, LLC**
200 Public Square, Suite 3270
Cleveland, Ohio 44114
Telephone:     216.658.2155
Facsimile:      216.658.2156
Email:          jcmiller@bmdllc.com
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 22nd day of February, 2018, a true and accurate copy of the foregoing Motion to Show Cause was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Christopher B. Congeni
*Counsel for Plaintiffs*

2

## MEMORANDUM IN SUPPORT

### I.  BACKGROUND

#### A.  The Dispute, TRO and TRO's Resolution

The instant matter arose from an incident that took place at or around 1261 W. 6th Street, Cleveland, Ohio 44113 ("Barley House") on or about November 26, 2017. The incident involved a dispute between Defendants, Richard Bengtson ("Defendant Bengtson") and Alissa Violet Butler ("Defendant Butler"), on one hand, and certain of Barley House's employees and/or patrons, on the other (including Plaintiffs).

Following Defendants' well-publicized social media attack on Plaintiffs, which included a series of false and inflammatory videos that purportedly described the incident in detail, and set in motion an onslaught of verbal threats, negative reviews, and unwarranted criticisms of the Barley House by way of Defendant Bengtson's platform as a self-described "Internet Gangster," FaZe Banks (and his rabid network of cyber-bullies known as the "CloutGang"), Plaintiffs commenced suit in Cuyahoga County Court of Common Pleas, Case No. CV-17-889784.

In a Complaint filed with the Court on or about November 30, 2017, Plaintiffs' alleged eight (8) separate causes of action arising from the incident in question, including requests for injunctive relief that (i) prohibited Defendants from making any further untrue or deceptive statements regarding Plaintiffs and (ii) required Defendants to remove from any and all sources any previous false or destructive statements and information. (*See* Compl., at ¶ 87). Plaintiffs also filed a temporary restraining order concurrent with their Complaint. (*See* Pltfs' Motion for TRO).

On December 4, 2017, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441, effectively transferring the matter to federal court. (*See* Doc. No. 1). Contemporaneous

with the filing of said Notice, Defendants filed an Emergency Motion to Dissolve the Temporary

Restraining Order. (*See* Doc. No. 3). Following briefing and several discussions on the record,

the parties entered into a Confidential Partial Settlement Agreement (the "Settlement

Agreement") that effectively resolved the pending motions related to the TRO and preliminary

injunction. (*See* Ex. A, Settlement Agreement). The Settlement Agreement also stipulated as to

limited conditions governing Defendants' publication of one final video post in response to the

incident. (the "Vlog").[1] (*Id.*). The parties then submitted a formal Notice of Partial Settlement to

the Court on or about December 14, 2017. (*See* Doc. No. 15).

In relevant part, the Settlement Agreement provided that:

> "Except as specifically provided [therein]… Defendants and those acting in concert
> with Defendants shall not make, disseminate, or participate in any statement, video,
> image, or graphic on any social media platform or otherwise make, disseminate, or
> participate in any commentary relating to the Barley House or its affiliated entities,
> Richie Madison, any employees of the Barley House or its affiliated entities, or any
> known patrons of the Barley House or its affiliated entities.

(*Id.* at § 2).

The Settlement Agreement further provided that "Bengtson [could] post one Vlog on his

YouTube channel on a date to be provided with 24 hours notice from Defendants' counsel to

Plaintiffs' counsel," and that the subject matter of said Vlog [would] be limited to the following

talking points, in chronological order, and in Bengtson's own words:

    i.      Bengtson's request to stop on line harassment or any other harassment of the
             Barley House, Madison, or their employees;

    ii.     Bengtson's intent that the Vlog is to be the end of this on-line discussion on the
             Disputed Events;

    iii.    Bengtson's acknowledgment of where they went wrong by bringing this to social
             media attention and not having dealt with the Disputed Events privately;

    iv.    Bengtson's intent to state his point of view or his side of the story regarding the
             Disputed Events limited to the following:
             a.  Bengtson's intent to state that he did not start any physical altercation;

---

[1] By entering into the Settlement Agreement, Defendant Bengtson voluntarily placed significant restrictions on
whatever First Amendment rights he may have enjoyed.

      b. Bengtson and Butler were not escorted to their car;

      c. Bengtson will state they paid their bar tab which totaled a sum certain including tips;

      d. Butler's mother did not apologize;

      e. Bengtson was involved in a fight outside because he was defending Butler, but;

      f. The person he was involved in the fight with was not involved with Barley House in any way;

   v. Bengtson will reiterate his intent and request to stop on line harassment or any other harassment of the Barley House, Madison, or their employees.

(*Id.* at § 2(i)-(v)).

Finally, the Settlement Agreement provided a catch-all that Defendants "[would] take all reasonable steps to ensure that the above-described video [would] not incite any hostile or violent reactions toward the Barley House or its affiliated entities, Richie Madison, or any employees or known patrons of the Barley House or its affiliated entities" (the "Catch-All Provision") (*Id.* at § 2).

To prevent further uproar from the CloutGang mob, the parties agreed to "keep the contents of [the] Agreement confidential and not [sic] disclose the terms or conditions of the Agreement, except to the extent required by law, to any person other than" those individuals and entities specifically described in the Settlement Agreement. (*Id.* at § 3).[2] Additionally, the parties recognized that "the Federal Court [would] retain jurisdiction to enforce the terms and conditions of [the] Agreement," and that such agreement would be "interpreted and enforced under the substantive law of the State of Ohio." (*Id.* at §§ 8, 10). The Settlement Agreement was then executed on or about December 13, 2018.

   B. <u>The Breach of the Private Settlement Agreement and Bengtson Contempt Hearing</u>

On December 19, 2017, just days after resolution of the litigious dispute, Defendant Bengtson published a Vlog that patently and egregiously violated the terms of the Settlement

---

[2] The contents have since become publicly available information by Order of the Court. (*See* Doc. 37).

Agreement, in complete disregard for Plaintiffs' well-being and the authority of this Court.

Defendant Bengtson's rallying cry to the CloutGang mob, which included 24 minutes and 33

seconds of self-fulfilling accusations reprising the incident in question (and which was primarily

filmed prior to the Settlement Agreement) incited a new wave of anger, threats, and hostility

toward Plaintiffs that culminated in direct threats of violence. On December 19, 2017, as a result

of Defendant Bengtson's misconduct and a series of ensuing bomb threats, the Barley House

closed for the night.

On or about December 20, 2017, undersigned counsel contacted the Court to inquire into

the filing of a show cause motion against Defendant Bengtson to protect Plaintiffs' interest.

Thereafter, during the course of a teleconference involving the Court, undersigned counsel

relayed the continuing nature of Defendants' violation, in brief. (*See* Doc. 18). In response, the

Court ordered the immediate take down of the Vlog and prohibited Defendant Bengtson from

commenting further on the incident. (*Id.*).  The Court also made the following observations:

> THE COURT: Well, I didn't see the whole video, so I – I saw enough – it is very clear
> that it violates the agreement, which I helped to mediate. The agreement is very clear.
> There was to be no other video.
>
> MR. CONGENI: Yes, your Honor.
>
> THE COURT: Instead Mr. Bengtson essentially posted a video repreasing the whole back
> and forth of the altercation on the Saturday after Thanksgiving.

(*See* Doc. 18, at p. 8:1-9).

Thereafter, the court scheduled the matter for hearing. (*Id.*).

On January 10, 2018, in anticipation of said hearing, Plaintiffs filed a Bench Brief in

Support of Sanctions for Violation of the Partial Settlement Agreement, a copy of which is

attached hereto as Exhibit "B." (*See* Ex. B; Doc No. 25). Following a response submitted by

6

Defendants, in which they erroneously contested the validity of the requested sanctions, (*See* Doc. No. 26), the parties appeared in Court on January 11, 2018.

During the course of the contempt hearing, Defendant Bengtson testified that he showed the complete video to counsel before uploading it on December 19, 2017; that he believed the video was consistent with the Settlement Agreement; and that he based this belief upon communications he had with counsel. (*See* Contempt Hearing Transcript). In light of this testimony, the Court directed Defense Counsel to file a pleading or affidavit by January 26, 2018 that confirmed or refuted the proffered statements, with adequate explanation as their desired course of conduct. (*Id.*).

C.  Defense Counsels' Affidavit and Order on Bengtson Contempt

On January 26, 2018, Defense Counsel filed an Affidavit pursuant to the Court Order and Minutes of the Proceeding dated January 16, 2018 (attached hereto as Exhibit "C") in which they attested as follows:

a.  Mr. Bengtson provided the complete Response Vlog to Defense Counsel before uploading it on December 19, 2017.

b.  Mr. Bengtson believed the Response Vlog was consistent with December 13, 2017 Confidential Partial Settlement Agreement.

c.  Mr. Bengtson based this belief upon communications he had with Defense Counsel and upon his review and understanding of the Confidential Partial Settlement Agreement.

d.  Defense Counsel advised Mr. Bengtson, among other things, that the 12/19/2017 Response Vlog was consistent with the 12/13/2017 Confidential Partial Settlement Agreement.

\*\*\*

(*See* Ex. C; Doc. No. 33).

Relying upon such affirmations, this Court entered an Order on February 5, 2018 (hereinafter, the "Contempt Order," attached hereto as Exhibit "D") withholding contempt sanctions against Defendant Bengtson. (*See* Ex. D; Doc. 37). Importantly, the Court's reluctance to impose a sanction on Defendant Bengtson was based, <u>not on the fact that no breach had occurred</u>, but instead, on the fact that "Bengtson [had] previewed the December 19, 2017 video with counsel, and counsel advised him that the video was consistent with the confidential settlement agreement." Accordingly, the Court declined to "impose any sanctions <u>on Bengtson</u>." (*Id.*) (emphasis added).

Notably, the Contempt Order did not preclude the imposition of sanctions upon Defense Counsel. (*Id.*). Additionally, the Contempt Order did not retract the Court's previous sentiment that contemptuous conduct occurred. (*Id.*). Because Defense Counsel specifically directed Defendant Bengtson to upload the Vlog, and no reasonable attorney would have authorized its publication under the terms of the Settlement Agreement, Defense Counsel must now be held in contempt of court.

## II.   LAW AND ARGUMENT

### A.  Standard of Review for Civil Contempt and Sanctions

It is firmly established that federal courts are vested with certain implied powers by the nature of their institution. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), citing *United States v. Hudson*, 3 L.Ed 259 (1812). For this reason, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.*, citing *Anderson v. Dunn*, 5 L.Ed 242 (1821). These powers are "governed not by rule or statute but by the control

necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

"When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003), citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). "The purpose of a contempt proceeding is to enforce the message that court orders and judgments are to be taken seriously." *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F.Supp.2d 778, 793 (N.D. Ohio 2005), *aff'd*, 252 Fed. App'x 55 (6th Cir. 2007).

Although civil contempt traditionally requires proof of clear and convincing evidence of a party's violation of a definite and specific order of the court, *NLRB*, 829 F.2d at 591, "federal courts [also] retain inherent power to enforce compliance with its lawful orders." *In re Northern Ohio Maritime Asbestos Litigation v. United Fruit Co.*, No. 1:10-cv-0001, 2016 WL 4533012 at * 1 (N.D. Ohio 2012) (emphasis added). To that end, "courts may punish contempt of its authority, including [mere] resistance to its orders." *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994). In either case, the decision to find a party in contempt is committed to the sound discretion of the district court. *Gary's Elec Serv. Co.*, 340 F.3d at 378, citing *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989).

Further, in the context of settlement, the Sixth Circuit has made clear that "courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them," even without continuing jurisdiction. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988), quoting *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976); *Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir. 1973). This remains true "even if [the]

agreement has not been reduced to writing." *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985), citing *Odomes v. Nucare, Inc.*, 653 F.2d 246, 252 (6th Cir. 1981).

Once the movant establishes a prima facie case of civil contempt, the burden shifts to the contemnor who may defend by coming forward with evidence to the contrary depicting why he is presently unable to comply with the court's order. *Gary's Elec. Serv. Co.*, 340 F.3d at 379, citing *United States v. Rylander*, 460 U.S. 752, 757 (1983). Thereafter, when evaluating a party's failure to comply, the court must consider whether the party "took all reasonable steps within [his] power to comply with the court's order." *Id.*, citing *Peppers,* 873 F.2d at 969 (emphasis added).

Where no reasonable explanation exists for the aberrant conduct, a federal court's implied authority permits it to "frame a sanction to fit the violation." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay, *Federal Practice and Procedure* § 2960, at 372-73 (2d ed. 1995); *see also Gary's Elec. Serv. Co.*, 340 F.2d at 385 (discussing use of judicial sanctions). Ordinarily, relief in a civil contempt proceeding takes the form of a fine in the amount of the damage sustained by plaintiff. *Id.* A fine for civil contempt may also include the granting of reasonable attorney's fees and expenses. *TWM Mfg. Co., Inc. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir. 1983), citing *Chas. Pfizer & Co v. Davis-Edwards Pharmacal Corp.*, 385 F.2d 533, 538 (2d Cir. 1967).

B. No Reasonable Attorney Would Have Advised Defendant Bengtson to Publish the Vlog

Because this Court retains inherent authority to enforce the terms of the Settlement Agreement against Defendant Bengtson, and sanctionable conduct ostensibly occurred as a direct result of Defense Counsels' blatant and unreasonable disregard for the settlement terms, Defense Counsel should be held in contempt of court.

10

It is axiomatic that federal courts retain the power to hold an attorney in contempt of court. *See Downey*, 30 F.3d at 685, citing 18 U.S.C. 6 401(3) ("a federal court has the power to impose civil or criminal sanctions on an attorney who fails to comply with a lawful, specific court order."). Among the enumerated grounds supporting a finding of civil contempt (along with sanctions) in the Sixth Circuit, is conduct by an attorney that "multiplie[s] the proceedings [of the court] unreasonably and vexaciously." *see also In re Jaques*, 761 F.2d 302 (6th Cir. 1985), citing 28 U.S.C. § 1927. However, willfulness is "not an element of civil contempt." *TWM Mfg. Co., Inc. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir. 1983); *see also In re Jaques*, 761 F.2d at 306, citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187  (1949) (recognizing that attorney's intent in disobeying court order was "irrelevant to validity of the contempt finding.").

Notwithstanding the Contempt Order, federal courts have traditionally held that reliance upon "advice of counsel and good faith conduct <u>do not</u> relieve [a party] from liability for a civil contempt." *Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Biner Co.*, 230 F. 120 (6th Cir. 1916) (emphasis added). Thus, to the extent this Court has exercised leniency toward Defendant Bengtson, Defense Counsel must now bear the brunt of this Court's authority.

In the corporate setting, it is well settled that "non-party corporate officers [i.e. agents] can be held in contempt for the corporation's failure to comply with the court's order, <u>so long as they were responsible for the corporation's conduct and failed to take appropriate action to ensure performance.</u>" *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 803 (6th Cir. 2017) (emphasis added). While concededly different than the facts at bar, the same principle applies.

11

In the instant matter, the parties entered into a Court-mediated Settlement Agreement on or about December 13, 2017. As set forth above, the Settlement Agreement not only empowered the Court to "retain jurisdiction to enforce the terms and conditions of [the] Agreement," but did so in the context of active litigation. (*See* Ex. A, at § 8). Insofar as *Brock* (and its progeny) permit the Court to enforce the terms of the Settlement Agreement through ancillary power related to the ongoing litigation (a proposition that seems obvious in light of the recent contempt proceedings), the Court *would have been* well-within its right to impose sanctions on Defendant Bengtson, <u>but for his reliance on Defense Counsels' representations</u>. Even so, this Court would have retained inherent authority to preside over Defendants' contemptuous conduct under federal law. *See In re Northern Ohio Maritime Asbestos Litigation*, 2016 WL 4533012 at * 1.

Without belaboring the nature of Defendant Bengtson's contempt, the Vlog includes, among other things, the following provocative content (collectively, the "Vlog Content"):

- An admission that he was "not allowed to upload [the] video," which boisterously serves as the title of the Vlog.

- A narrative regarding the "lack of help or protection [Defendants received] from Barley" on the night in question.

- Accusations that certain of the Barley House staff were "mocking [Defendants] on the way out" and that blame has "everything to do with Barley," including explicit detail accusing the Barley House staff of "dragg[ing] [Defendant Butler]" out by [her] neck..." in front of her family, all of which resulted in embarrassment to Defendants.

- Commentary wherein Defendant Bengtson "break[s] down what Barley did wrong" and the purportedly troubled "past of Barley, just to support [his] claims that [it] isn't a perfect establishment," and that "Barley is not right in this."

- Direct solicitations to the CloutGang mob intended to cast doubt on the Barley House staff's role in the incident and corresponding reputation in which Defendant Bengtson rhetorically asks "[y]ou guys are probably asking yourself, '[w]ell, if this guy hit Alissa and he doesn't work for Barley, then what is the problem? [W]hat did they do wrong?" and then proceeds to reaffirm that "[t]hey did plenty wrong."

12

- Identification of Plaintiff, Richie Madison, by name in a text message screenshot detailing his "beef with Barley"…[and] what happened in the basement with [the bouncer] where he grabbed [Defendant Bengtson] by [his neck], [and] dragged [him] up the stairs for no other than reason [Defendant Bengtson] waiting in a restricted area….," noting that he was "allowed to be down there, [the bouncer] shouldn't have done this, [and that] [the bouncer] mishandled the situation 100%...."

- Images describing Barley House's response to the altercation between Defendants and the Barley House, including on-screen text suggesting that certain persons at Barley House pushed Defendant Butler.

(*See* Ex. B; Doc No. 25).

As set forth in Plaintiffs' Bench Brief, Defendant Bengtson "did not limit the video to the specific six (6) subject matters of the Disputed Events… did not take all reasonable steps within his power to ensure the video would not incite any hostile or violent reactions… [and] materially breached and flagrantly exploited the Settlement Agreement as a vehicle for him to disseminate the video he originally made and decided to post on or around December 1, 2017 before the TRO was entered against him." (*See* Ex. B; Doc No. 25, at p. 5). To the extent that this Court confirmed in its December 20, 2017 teleconference that it was "clear that [the Vlog] violate[d] the agreement," and Plaintiffs' briefs resolve any dispute as the nature and scope of the Settlement Agreement, the Court need not re-litigate the issue further – the Vlog is clearly contemptuous.

In light of the testimony and affidavits submitted to the Court, however, it's also clear that Defense Counsel is <u>primarily responsible</u> for such contempt, and <u>failed to take appropriate action</u> to limit the harm. Insofar as the Court needed only eight (8) or ten (10) of twenty-four (24) possible minutes to determine that the Vlog was overtly contemptuous, (*See* Doc. 18 at p. 4:4-11), it's evident that Defense Counsel, as agents for Defendant Bengtson, did not "[take] all reasonable steps within [their] power to comply" with the terms of the Court-mediated Settlement Agreement." *See Gary's Elec. Serv. Co.*, 340 F.3d at 379, citing *Peppers,* 873 F.2d at

969. After all, no reasonable person, let alone attorney, could reconcile the Vlog Content with the Settlement Agreement.

At minimum, the Vlog Content (as a whole) violates the Catch-All Provision requiring Defendants to take "reasonable steps to ensure that the above-described video will not incite any hostile or violent reactions" by effectively painting a picture in which Barley House staff and patrons were the aggressors, with a history and troubled past, and Defendant Bengtson was the victim who allegedly came to rescue Defendant Butler at the wrong place at the wrong time. At most, Defendant Bengtson's commentary and imagery far exceed the scope of numerous provisions of the Settlement Agreement. For example, Defendant Bengtson's repeated commentary regarding Barley's wrongdoing in the matter exceeds the scope of Section 2(iv)(a), allowing him to state that he did not start any physical altercation. Defendant Bengtson's commentary also specifically ties the events to Plaintiff Madison in direct violation of Section 2(iv)(f). Moreover, Defendant Bengton's "breakdown" of Barley House's troubled past does not even arguably fall within the scope of Section 2, and instead, contributes to ongoing harassment. As revealed by Defendant Bengton's Brief in Response to Order Setting the Contempt Hearing, the Vlog also plainly violates the planned chronology. (*See* Doc. 24, at Ex. 2).

In the Court's own words, Defendant Bengtson's video was used to "conduct his own version of the evening's events." (*See* Doc. 37). To the extent that Defense Counsel was aware of the potentially provocative nature of the Vlog Content before publication, they did not even attempt to "tone down" Defendants' cyberbulling campaign. Nor did they take steps to prevent the incitement of hostile and violent reactions that were near certain to ensue.

Instead, by allowing Defendant Bengtson to publish an "edited version of a video he had prepared before the TRO was entered…." (*See* Doc. 23), Defense Counsel engaged in conduct

14

that "unreasonably and vexaciously" multiplied the proceedings of the Court, as made clear by recent events. *See In re Jaques*, 761 F.2d at 302 (emphasis added.). In doing so, Defense Counsel all but disregarded the terms of settlement and effectively directed their client to violate a court-mediated agreement, to the irreparable harm of Plaintiffs and this Court's judicial authority. Such conduct cannot go unpunished.

## III.    CONCLUSION

For all of the foregoing reasons, and for each and every one of them taken together, Plaintiffs respectfully request this Court:

(i)      issue an Order requiring Defense Counsel, David M. Cuppage, Esq. and Robert T. Glickman, Esq., of the law firm, McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Scott Sholder, Esq., of the law firm, Cowan, Debaets, Abrahams & Sheppard, LLP (collectively, "Defense Counsel"), to show cause as to why they should not be held in contempt of court; and

(ii)     impose sanctions, fees, costs, expenses, and such other relief as this Court deems just and equitable to compensate Plaintiffs' for the irreparable harm.


Respectfully submitted,

/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
Adam D. Fuller (#0076431)
Chad R. Rothschild (#0088122)
**BRENNAN, MANNA & DIAMOND, LLC**
75 East Market St.
Akron, Ohio 44308
Telephone:     330.253.5060
Facsimile:     330.253.1977
Email:         cbcongeni@bmdllc.com
               adfuller@bmdllc.com
               crothschild@bmdllc.com

15

/s/ Jeffrey C. Miller
Jeffrey C. Miller (#0068882)
**BRENNAN, MANNA & DIAMOND, LLC**
200 Public Square, Suite 3270
Cleveland, Ohio 44114
Telephone:      216.658.2155
Facsimile:      216.658.2156
Email:          jcmiller@bmdllc.com
*Counsel for Plaintiffs*