# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| W. 6 RESTAURANT GROUP LTD., ) | CASE NO. 1:17 CV 2521 |
| d/b/a Barley House of Cleveland, ) | |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| RICHARD BENGTSON, et al., ) | |
| ) | |
| Defendants. ) | |

This case is before the Court on Defendants' Motion to Alter or Amend Order of February 5, 2018. (**Doc #: 41**.) To the extent explained below, the Motion is **granted**.

**I.**

On December 1, 2017, Plaintiffs W. 6 Restaurant Group Ltd., which owns and operates Barley House Cleveland ("Barley House"), and Richie Madison, a security guard for Barley House, filed a Verified Civil Complaint and Motion for Temporary Restraining Order ("TRO") against Richard Bengtson and Violet Butler in Cuyahoga County Common Pleas Court. The Verified Complaint alleges that Defendants visited Barley House on the evening of Saturday, November 25, 2017, and remained on the property past normal business hours until security personnel were forced to remove them from a restricted area of the property at approximately 2:30 a.m. on Sunday, November 26, 2017. The Verified Complaint further alleges that Defendants were physically and verbally combative with Barley House security personnel as they were escorted off the property, and that they continued to engage in altercations with third parties while lingering outside Barley House premises. The Verified Complaint alleges that

Defendants, who have millions of followers across numerous social media platforms, used their online fame to engage in a cyber-bullying campaign against Barley House employees and patrons.  The cyber-bullying campaign caused hundreds of Defendants' followers to harass and threaten Barley House employees and patrons.

On November 30, 2017, the state court judge issued an *ex parte* TRO against Defendants that enjoined Defendants from, among other things, publishing any statements, videos, or images on social media platforms concerning Plaintiffs, their employees and patrons, and from continuing to engage in their cyber-bullying and cyber-attack campaigns.  (Doc #: 3-1.)

On December 4, 2017, Defendants removed the case to federal court and filed an Emergency Motion to Dissolve TRO.  (Doc #: 3.)  Because the TRO was set to expire on December 14, the Court held a hearing on Wednesday, December 13, 2017, to address the expiring TRO and the motion to dissolve the TRO.  The hearing quickly transformed into a settlement conference on injunctive relief.  Ultimately, the parties agreed on a brief statement covering approximately seven points for Defendants to publish to their social-media followers, after which neither party would ever mention the incident again.  It was discussed, and the Court believed it was understood, that should Defendants violate this agreement, they could be liable for contempt of court.  On December 14, 2017, the parties filed a document entitled "Notice of Partial Settlement," which stated that "[t]he partial settlement agreement will remain confidential, but the Court shall retain jurisdiction to enforce its terms and conditions."  (Doc #: 15 at 1.)

On December 20, 2017, Plaintiffs' Attorney Adam Fuller contacted a member of the Court's staff to inquire what to file arising from Defendants' alleged violation of their partial

-2-

settlement agreement via the YouTube video Bengtson posted on December 19, 2017. The Court held a teleconference with counsel and clients at which time Robert George (Barley House owner) stated that he had been forced to close the establishment the previous night due to harassment and threats of violence arising from Bengtson's latest video. The Court noted that, after watching 8 minutes of the 25-minute video, it was clear that Bengtson had violated the parties' December 13 agreement, ordered Bengtson to take the video down immediately, and prohibited him from saying anything further on any media platform about Barley House, either directly or indirectly, until a contempt hearing could be scheduled. Bengtson thereafter filed a brief arguing that contempt was not an appropriate sanction because he did not violate a court order, and a breach of contract action would be more appropriate. (Doc ##: 24, 26.)

The Court held an evidentiary hearing on January 11, 2018, during which Bengtson testified that he showed the December 19, 2017 video to his counsel who approved the video before he posted it. The Court thereafter directed his counsel to file an affidavit either confirming or refuting Bengtson's testimony. On January 26, 2018, Bengtson's counsel filed an affidavit confirming Bengtson's testimony. Because Bengtson previewed the December 19, 2017 video with counsel and counsel advised him that the video was consistent with the settlement agreement, the Court did not impose any sanctions on Bengtson. (Doc #: 37 at 3.) At the parties' request, the Court referred the case to the Magistrate Judge for purposes of mediating the damages part of the case. (Doc #: 28, 31.) The mediation is scheduled for April 18, 2018. (Doc #: 40.)

Meanwhile, on February 22, 2018, Plaintiffs filed a Motion to Show Cause and for Sanctions Against Defense Counsel based on defense counsel's averments that they advised

Bengtson his video was consistent with the parties' agreement before he published it.  (Doc #: 39.)  The Court quickly conducted a teleconference with counsel stating, among other things, that litigation on the Motion was stayed until after the mediation.  (3/1/18 Minutes of Proceedings.)

Nonetheless, on March 5, 2018, Defendants filed the pending Motion to Alter or Amend Order of February 5, 2018.  (**Doc #: 41**.)  Defendants ask the Court to correct a clear error of fact, specifically, the Court's language in its February 5, 2018 Order wherein the Court made the following statements:  "The Court held a hearing on Wednesday, December 13, 2017 at which time the parties <u>and Court agreed</u> on a brief statement of approximately seven sentences for Defendants to publish to their followers on social media, . . . " and "<u>Defendants also agreed that, should they violate that agreement, they would be liable for contempt of court</u>."  (Doc #: 37 at 2 (emphasis added).)  The Court agrees with Defendants that its choice of words was improvident.  To that extent, the Motion (**Doc #: 41**) is **GRANTED**.  However, the subject of what would happen should Defendants violate the agreement was discussed in chambers on December 13, 2017, and it was understood by everyone that Defendants could be held in contempt if they violated the agreement.

In any event, the Court has sanction powers under Rule 11 of the Federal Rules of Civil Procedure.  "Rule 11's standard under which parties' actions are governed is 'reasonableness under the circumstances.'"  *Adams v. Penn Line Services, Inc*., 620 F. Supp. 2d 835, 838-39 (N.D. Ohio 2009) (quoting *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986), in turn citing *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) ("In this circuit the test for the imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the

circumstances.")).  And, "a good-faith belief in the merits of a case is insufficient to avoid Rule 11 sanctions."  *Id*. at 839 (citing *Mann v. G&G Mfg., Inc*., 900 F.2d 953, 958 (6th Cir. 1990)).  "Sanctions are mandatory in the event the court determines Rule 11 has been violated, but the court has 'wide discretion' in delineating the extent of those sanctions."  *Id*. (quoting *Albright*, 788 F.2d at 1222).

That said, the parties are directed to focus their present efforts on the upcoming mediation with Magistrate Judge William Baughman.

**IT IS SO ORDERED.**

   */s/ Dan A. Polster     March 14, 2018*
**Dan Aaron Polster**
**United States District Judge**